UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID SIDNEY HATCH,            )
                               )
    Plaintiff                  )
                               )
v.                             )   No. 2:10-cv-9-DBH
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social Security, )
                               )
    Defendant                  )

# REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the administrative law judge was required to find that his right hand injury met Listing 1.08 and erred in evaluating his credibility. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from borderline intellectual functioning, a learning disorder, dysthymic disorder, anxiety disorder, residual effects of a fracture/dislocation of the right wrist and hand, status post surgeries, and early arthritic syndrome in the right knee, impairments that were severe but which did not,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 15, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

considered individually or in any combination, meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, Record at 10-12; that he retained the residual functional capacity ("RFC") to lift and carry 10 pounds frequently and 20 pounds occasionally, primarily with the left upper extremity with use of the right hand to assist and move items, allowing for SVP (Specific Vocational Preparation) 1 and SVP 2 level tasks requiring verbal or demonstrated instructions, no reading more than basic words, no report writing, and within SVP 1 and SVP 2 simple instructions, to maintain attention, concentration, focus, persistence, and pace throughout a normal workday or workweek, standing and walking up to a total of six hours in an eight-hour day, but not to use right hand controls, to finger or feel with the right hand, to make a firm fist with the right hand to hold an item, to climb ladders, ropes, or scaffolds, to crawl, or to use machinery or tools requiring bilateral manual dexterity, Finding 5, *id.* at 13-14; that the plaintiff was unable to perform any past relevant work, Finding 6, *id.* at 18; that, given his age (33 on the alleged date of onset of disability, August 8, 2007), limited education, work experience, and RFC, use of the Medical-Vocational Rules in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making led to the conclusion that there were jobs existing in significant numbers in the national economy that the plaintiff could perform, including parking lot attendant, surveillance system monitor, and document preparer, Findings 7-8, 10, *id.* at 18-19; and that, therefore, he was not under a disability, as that term is defined in the Social Security Act, at any time from August 8, 2007, through the date of the decision, July 27, 2009, Finding 11, *id.* at 20. The Decision Review Board affirmed the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.,* 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's appeal also implicates Step 3 of the sequential review process, at which stage a claimant bears the burden of proving that his impairment or combination of impairments meets or equals the Listings. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listed impairment, the claimant's medical findings (*i.e*., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §S 404.1525(d), 404.1528, 416.925(d), 416.928. To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. §§ 404.1526(a), 416.926(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1526(b), 416.926(b).

## Discussion

### A. Step 3 Issue

The plaintiff contends that his right hand injury met Listing 1.08 and that the administrative law judge was required so to find. Itemized Statement of Errors Pursuant to Local Rule 16.3 ("Itemized Statement") (Docket No. 8) at 2-7. The Listing provides as follows, in relevant part:

> 1.08 *Soft tissue injury (e.g., burns)* of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset.

20 C.F.R. Part 404, Subpart P, Appendix 1, §1.08.

The definition at section 1.00M provides, in relevant part:

> *Under continuing surgical management*, as used in 1.07 and 1.08, refers to surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part. It may includes such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy.

20 C.F.R. Part 404, Subpart P, Appendix 1, §1.00M.

The administrative law judge said the following about the plaintiff's right hand:

> The claimant was involved in a motor vehicle accident in August 2007, resulting in a complex fracture dislocation of the MCP joint of the right index finger. He underwent two surgeries, the second being arthroscopy to insert a right index finger silicone implant (Exhibits 2F, 7F, 18F). Following surgery, the claimant continued to experience neuropathic pain in his right upper extremity (Exhibit 11F). The undersigned finds the claimant's residual effects of the wrist and hand injury to be severe as they result in more than minimal functional limitations.
> \* \* \*
> The claimant's representative argued that the claimant's wrist/hand impairment meets Listing 1.08. The undersigned has evaluated the severity of the claimant's impairment under Listing 1.08 and finds the

> impairment does not meet or medically equal this listing, because the records indicate that the injury is not a soft tissue injury, has not required continued surgical management as defined in 1.00(m), and although the claimant reported continued pain, the evidence reflects that major function was restored within 12 months of onset as discussed in Finding 5. The undersigned's conclusion is supported by the reconsideration State Agency medical consultant's opinion that more than 12 months after the injury, none of the impairments individually or in combination met or equaled a Listing (Exhibit 14F).
>
> * * *
>
> The claimant was injured in a motor vehicle accident in August 2007, injuring his right hand and wrist. His injuries included a fracture dislocation through the index finger, which required two surgeries. The second reconstructive surgery took place in November 2007, and required a silicone implant. Both of the surgeries were performed by Dr. Samuel Scott (Exhibits 2F, 7F, and 18F)[.] Dr. Scott's post-surgery examinations indicated that the claimant had limited flexion and was unable to extend his index finger completely. In January 2008, Dr. Scott noted the claimant's probable neurogenic pain and non-response to Hydrocodone and physical therapy. The pain was described as electrical in nature and a burning type pain without any motion (Exhibit 7F). Dr. Scott advised the claimant that nothing else surgically could be done and referred him for a consultation to Mercy Pain Clinic. An examination by Dr. Kenneth Blazier on May 15, 2008, noted a normal extremity examination and a sensory examination with the following findings: hyperpathia, allodynia, hyperesthesia and hypesthesia in a patchy fashion throughout the distal right upper extremity due to trauma and subsequent surgery. Dr. Blazier recommended medication for the neuropathic pain and the use of anti-depressants in the treatment of the claimant's hand pain. He advised the "judicious use of low dose opiates" (Exhibit 11F). The claimant has continued to treat with his primary care physician, Dr. Royer, who has prescribed Gapapentin and Tramadol (Exhibit 24F).
>
> * * *
>
> Initially, the claimant underwent significant treatment for his right upper extremity injury, but within less than twelve months, his treatment was inconsistent with the recommended treatment and he did not continue with physical therapy. (Exhibits 16F and 19F) Although he stated the physical therapy was not helpful, he has at times[] given inconsistent reasons for terminating treatment, including[] too much traffic and then no money for the required co-payments. With respect to the lack of finances, the record does not reflect that he attempted to work out a payment plan.

Record at 11, 12, 15, 16.

The plaintiff asserts that "[t]his court in *Wasilauskis v. Astrue*, No. 08-284-B-W slip op. at 6 (D.Me. April 21, 2009), felt the type of injury the claimant sustained was appropriate to consider under Listing §1.08." Itemized Statement at 3. This is an inaccurate characterization of the substance of that opinion.[2] The injury in that case was "a severe left-hand degloving injury in an automobile accident . . . during which his hand was dragged between the car window and the asphalt. He lost tissue, tendons, and even part of the bone of the hand." *Wasilauskis v. Astrue*, Civil No. 08-284-B-W, 2009 WL 861492, at *6 (D. Me. Mar. 30, 2009). That plaintiff underwent "reconstructive surgery." *Id.*

In the instant case, the plaintiff asserts that he sustained a "degloving type injury of the dorsal aspect of the hand." Itemized Statement at 3. It is true that the operative report dated August 8, 2007, refers to such an injury, along with several fractures and dislocations of bones of the hand, Record at 225, but it is also clear that this and the two subsequent surgeries cited by the plaintiff, Itemized Statement at 3-4, were primarily or exclusively devoted to repair of the broken bones, *id.* at 219-20, 224-26.[3] There is no evidence that the surgeon continued to treat the plaintiff thereafter, so there is no evidence of continuing surgical management, even if the treatment of the scar tissue that developed post-surgery could be considered treatment of a soft tissue injury. And, in any event, surgical treatment of broken bones is *not* treatment of a soft tissue injury. *See, e.g., Williams v. Astrue*, Civ. Action No. 3:09cv238-CSC, 2010 WL 1905031, at *3 (M.D.Ala. May 12, 2010) (injury to skin, muscle, and fascia may be considered soft tissue injury). The examining orthopedic surgeon to whom the plaintiff's attorney referred him stated

---

[2] The suggestion that section 1.08 applied to the plaintiff's injury in that case was made by the plaintiff on appeal. 2009 WL 861492 at *5. The court considered that possibility *arguendo*, and rejected it for a number of reasons. *Id.* The court did not find at any time that the plaintiff's degloving injury was "appropriate to consider" under section 1.08 of the Listings.

[3] The surgical treatment of contracted scar tissue on November 15, 2007, was to the forearm, not the hand. Record at 220.

that the plaintiff met Listing 12.04 (affective disorder) but did not mention Listing 1.08. Record at 515-16. The plaintiff devotes considerable time and effort to an argument that major function in his right hand was not restored within 12 months after the injury was incurred, Itemized Statement at 5-7, but that issue need not be reached because any such loss of function has not been shown to be the result of a soft tissue injury, the first and most important requirement of Listing 1.08.

### B. Credibility/Treating Source Opinion

The plaintiff characterizes as a single issue – the administrative law judge's alleged failure "to properly evaluate the claimant's symptoms, and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence[,]" Itemized Statement at 7 – what appears to me to be two issues. Under this heading, he discusses the administrative law judge's evaluation of the credibility of his testimony, *id*. at 7-9, and the opinion of his treating primary care physician that "his right hand was disabled[,]" *id*. at 9. I will discuss the two issues separately.

#### *1. Credibility*

The plaintiff challenges the administrative law judge's reliance on his failure to seek treatment for his alleged degree of pain and his work history. *Id*. at 7-8. He also relies on the report of Dr. Kenneth L. Blazier, a pain specialist to whom he was referred by his orthopedic surgeon. *Id*. at 8-9. None of these points requires a different outcome for this application.

According to the plaintiff, the administrative law judge's finding with respect to his credibility violates Social Security Ruling 96-7p because it is "both conclusory[] and not supported by substantial evidence[.]" *Id*. at 8. With respect to the plaintiff's credibility, the administrative law judge said:

7

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the clinical findings and medical opinions, described above (SSR 96-7p). . . .
>
> With respect to the use and/or effectiveness of medication, the claimant did not always take his pain medication, which is inconsistent with the alleged disabling pain. In November 2007, Dr. Scott noted no medications. Now, the claimant is taking nonnarcotic medications. Mr. Hatch testified that he uses Tylenol which causes stomach upset, and use of Zoloft for his mental impairments. In addition, the claimant reported the past medications relieved the pain, but caused side effects. Use of over the counter Tylenol is inconsistent with the alleged hand pain to the extent that he cannot touch his right hand or have it touched. However, the claimant has not pursued any other treatment modalities, low cost or no cost treatment, and there is no indication he has been denied care/medication due to finances or lack of insurance.
>
> With regard to the complaints of knee pain, the record indicates lack of treatment until May 2009, and a recent diagnosis of early arthritic changes. No other modalities of treatment besides a recent knee brace have been pursued. This impacts the claimant's credibility of asserted pain and limitations regarding standing and walking and the need to lie down. This level of limitation has not been reported to any medical professional, and no medical professional has instructed the claimant that he is limited in standing/walking and/or needs to lie down during the day. . . .
>
> In April 2009, the claimant reported that his knee pain and hip pain overshadow[ed] the hand pain, which clearly contradicts the alleged hand pain and testimony regarding the need to elevate his hand, not touch his rights hand, or have the hand touched. The record reflects minimal knee findings and a normal x-ray, as well as no evidence relative to the hip allegations. (Exhibit 25F) Further, the evidence does not reflect a diagnosed back impairment despite the alleged disabling pain. The record does not reflect the claimant has reported this level of pain and the level of pain to which he testified. . . .
>
> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, and support that he is able to perform within the residual functional capacity. . . .
>
> As noted above, the claimant has not pursued mental health treatment and is prescribed anti-depressant medication by his primary care

> physician. In March 2009, the claimant reported to Dr. Diamond that he only gets depressed "once in a while" (Exhibit 22F). . . .
>
> With respect to the claimant's work history, it does not bolster his credibility. For most years prior to 2004, the claimant had low earnings. Further, there is no indication that the claimant pursued vocational rehabilitation to retrain or to find a job within his residual functional capacity. Instead, immediately after the injury in August 2007, he applied for Social Security disability benefits in September 2007.

Record at 16-17.

This extensive discussion of the plaintiff's credibility more than satisfies the requirements of Social Security Ruling 96-7p, even if the two particular aspects identified by the plaintiff are omitted.[4] *See generally* Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2010-2011) at 137-41. With respect to those aspects, I note that, while the plaintiff is correct about the use of work history to assess credibility,[5] testimony by the plaintiff that his monthly income is $363.00 and that his insurance "will only 'cover just non-narcotic medications[,]'" Itemized Statement at 8, is not enough to establish that he cannot afford the medications that are prescribed for him or that he does not seek prescriptions because he knows that he cannot pay for the medications or obtain them through Medicaid or insurance.

### 2. *Dr. Gene Royer*

The plaintiff apparently contends that the opinion of Dr. Gene Royer, to the effect that the plaintiff's "right hand was disabled," should have been given controlling weight and that the decision must be remanded in any event because this opinion was not mentioned by the administrative law judge. *Id*. at 9. The administrative law judge said of this treating physician

---

[4] *But see Albors v. Secretary of Health & Human Servs.*, 817 F.2d 146, 147 (1st Cir. 1986) (use of only aspirin for pain supports rejection of claim that pain was disabling).
[5] Work history is an inappropriate basis on which to assess credibility. *Littlefield v. Astrue,* Docket No. 07-72-P-H, 2008 WL 648961, at *5 (D. Me. Mar. 5, 2008); *Black v. Barnhart*, No. 05-172-P-H, 2006 WL 1554645, at *5 (D. Me. June 1, 2006).

9

that: "The claimant has recently presented to Dr. Royer for various complaints, including right knee pain. An x-ray taken of the right knee in May 2009 was normal, and Dr. Royer noted only generalized tenderness and no edema or effusion (Exhibit 24F)." Record at 15.

The plaintiff first contacted Dr. Royer's office on September 9, 2008, *id.* at 511, 10 months before the hearing and one year after he filed his applications for benefits, *id.* at 8. From the first visit, Dr. Royer records one of the plaintiff's complaints as "right hand disabled," but it is not clear whether he is recording what the plaintiff has told him or the results of his own observations and testing. A treating physician's opinion is given controlling weight only when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Neither of these requirements is met in this case. There is little or no evidence of clinical and laboratory diagnostic techniques with respect to the plaintiff's right hand in Dr. Royer's records, and there is other substantial evidence in the record that is inconsistent with a finding of complete disability of the right hand, including reports of his activities of daily living noted by the administrative law judge, Record at 17, and the RFC assessments of the state-agency reviewing physicians, *id.* at 328 ("No Right Hand controls"), 332 ("some limits of Right hand function"); 392 ("No hand controls R hand"), 396 ("Major injury to R hand/arm only resulting in marked limitation of function"). Finally, and significantly, the plaintiff offers no argument and no authority for the necessarily-implied final stage of his argument: that "disability" of one hand equals inability to work at all.

Because this inconsistent evidence exists in the record, and because the administrative law judge assigned it "great weight," *id.* at 18, I conclude that her failure to mention Dr. Royer's

10

characterization of the plaintiff's right hand is a harmless error. It cannot be determined from Dr. Royer's records whether he was equating disability of the right hand with total inability to work and it is therefore understandable, although unfortunate, that the administrative law judge did not mention that entry specifically in her evaluation of Dr. Royer's records, particularly when those records make clear that the plaintiff's chief complaints while he was being treated by Dr. Royer were of hip and knee pain.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of December, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge